**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GAINES E. HEARNS, JR.,** | : | |
| **Plaintiff** | : | |
| **vs.** | : | **CIVIL ACTION NO. 3:CV-05-323** |
| | : | **(CHIEF JUDGE VANASKIE)** |
| **STEVE PARISI, et al.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

Gaines E. Hearns, Jr., proceeding pro se, commenced this predatory lending practices action on February 15, 2005. Mr. Hearns claims to have been one of a number of alleged victims of fraudulent sales and lending practices in the Pocono Mountain region of Pennsylvania. Essentially, the averments of Mr. Hearns's pro se Complaint mimic the allegations presented in a counseled action commenced in August of 2004, captioned Wilson et al. v. Parisi, et al., and docketed in this Court to No. 3:CV-04-1737.[1] In this regard, Hearns names as defendants those falling within the three categories of Defendants named in the Wilson action: (1) Steve Parisi, Donald Kishbaugh, and their affiliated companies (the "PK Defendants")[2]; (2) appraiser Defendants Kevin Kennedy and Kathleen Spitzfaden; and (3)

---

[1]Hearns is now represented by the attorney who brought the Wilson action.

[2]In addition to Steve Parisi and Donald Kishbaugh individually, the PK Defendants include P & K Developers, LLC; Eagle Valley Homes, Inc.; Eagle Valley Homes North Incorporated; Mobile Developing Company; Nations 1st Mortgage Company; Eagle Mountain (continued...)

lending institutions M&T Mortgage Corporation and Chase Manhattan Mortgage Corporation (sometimes collectively referred to as the "Lender Defendants"). Hearns, as did the Plaintiffs in Wilson, asserts a broad ranging conspiracy to engage in fraudulent conduct to induce unsophisticated, lower income, first time home buyers living in the New York City metropolitan area to acquire new homes in the Pocono Mountain region at inflated prices and on mortgage terms that were beyond the means of the unsuspecting purchasers.

Pending are motions to dismiss filed on behalf of all defendants with the exception of Kevin Kennedy.[3] Defendants in this action raise many of the same challenges to the Complaint as were presented in Wilson. This Court's rulings on the motions to dismiss in Wilson, therefore, will be instructive in addressing the pending motions to dismiss. For the reasons set forth in the February 7, 2006 Memorandum opinion in Wilson (the "Wilson Opinion"), as well as for the reasons set forth below, the motions to dismiss the claims asserted by Hearns under the Racketeering Influenced and Corrupt Organizations Act ("Racketeering Act" or "RICO"), 18 U.S.C. § 1961, et seq., will be denied; the motions to dismiss filed on behalf of the PK Defendants and Kathleen Spitzfaden with respect to the claims asserted under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §

---

[2](...continued)
Mortgage Company; P & K Developers, Inc.; Nations 1st Mortgage Co. LLC; Nations 1st Mortgage Company, Incorporated; and Nations 1st Mortgage Brokers Corporation.

[3]It does not appear that Mr. Kennedy has been served with process in this case.

201-1, et seq., will be denied; and the motions to dismiss filed on behalf of the Lender Defendants directed to the claims asserted under the UTPCPL and the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., will be granted.

## I. BACKGROUND

Hearns, like the Plaintiffs in Wilson, alleges that the PK Defendants engaged in a pattern of false advertising directed toward unsophisticated lower income, first time home buyers in the New York metropolitan region. Hearns specifically avers:

> [The PK Defendants] would utilize interstate commerce by running fraudulent and deceptive advertisements in the market territories, seeking to procure purchasers for new home construction in the area around Effort, Saylorsburg, and surrounding areas in Monroe County, Pennsylvania. The prospective customer would be shown a home or building plan or map or picture and then would be driven around by the Defendants' representative to different communities being developed by the [PK] Defendants at that time. The prospective customer would be shown the costs of the home through financing secured by the [PK] Defendants' affiliate and would be questioned whether the sum to be charged through the financing of the new home exceeded the current rent the prospective customer was paying in the New York metropolitan area. The sales representative demonstrated to the prospective customer only what the home would cost for the payment of the principal and interest on the mortgage and would not usually include the real estate taxes, homeowner maintenance assessments, where applicable, or other costs associated with owning a home in the Poconos, such as garbage pickup, home maintenance, or any of the other surprises soon to be encountered by a first-time homeowner. The [PK] Defendants' representative would indicate that the prospective customer was to receive an allowance towards the cost of closing fees as an inducement to agree to buy the lot or enter into the construction agreement. The

> [PK] Defendants targeted naive and unsophisticated home purchasers, who had never owned a home before. The representative assured the prospective customer that he would qualify for the mortgage, that no attorney would be needed to represent him in the transaction, and that he would be happy in his new home. The representative also stated that their office would take care of everything and that the construction would be completed and the loan secured.

(Complaint ¶ 34.) Hearns, like the plaintiffs in Wilson, claims that the PK Defendants conspired with appraisers Kennedy and Spitzfaden to inflate the value of the property being acquired. (Id. ¶ 97.) Hearns avers that the PK Defendants procured M&T Mortgage Corporation as the lender to provide the financing necessary for consummation of the transaction. (Id. ¶ 106.) Hearns asserts that M&T, as a knowing participant in the conspiracy, failed to follow customary underwriting guidelines and due diligence procedures in extending credit to him. (Id. ¶¶ 107-11.) Hearns claims that M&T "knew or should have known that it was procuring sub-prime loans involving inflated values from persons who should not have been able to procure the mortgage." (Id. ¶ 148.) As to defendant Chase Manhattan Mortgage Corporation, Hearns alleges, "upon information and belief," that Chase acquired the mortgage from M&T without undertaking proper due diligence and despite being aware of predatory lending practices in the Pocono region of Pennsylvania. (Id. ¶¶ 124-28.)[4] Hearns concludes that as a result of the conspiracy and fraudulent acts:

---

[4] Chase has submitted an uncontradicted affidavit that its role in the Hearns transaction was to acquire rights to service his mortgage from M&T.

> [He] "purchased a house for approximately 35 percent to 45 percent in excess of its actual value, . . . is obligated to pay a note and mortgage that he will not be able to afford within thirteen months of the closing, the Defendants Kennedy and Spitzfaden have earned appraisal fees on the homes constructed and sold by the [PK] Defendants, the [PK] Defendants pocket an inflated premium for the sale of the home over the home's actual value, the defendant M&T has issued a loan that it knew or should have known that the customer cannot afford . . . .

(Id. ¶ 130.)

Hearns executed an agreement for the purchase of the property in question on or about October 16, 2000. (Id. ¶ 174.) Closing on the transaction occurred on December 21, 2000. (Id. ¶ 81.) Hearns avers that in May of 2001, he was told that the escrow fund established by M&T may be inadequate to cover real estate taxes. (Id. ¶¶ 200-01.) Hearns further avers that at about this same time, there were news reports concerning predatory lending schemes in the Monroe County, Pennsylvania area. (Id. ¶¶ 144-45.) Plaintiff asserts that within the first year of his acquisition, he learned that the real estate taxes on the property had increased. (Id. ¶ 131.) As a consequence of learning this fact, and facing other unexpected costs, he investigated the possibility of refinancing the property to reduce monthly obligations, only to discover that the property had a value less than the existing mortgage. (Id. ¶ 135.) Hearns avers that he is neither able to refinance the property nor sell it, and is left with a mortgage and other monthly obligations that he cannot meet. (Id. ¶¶ 141-43.)

Like Plaintiffs in Wilson, Hearns asserts that the PK Defendants violated 18 U.S.C. §

1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity, consisting of mail and wire fraud. (Id. ¶¶ 227-45.) The Second Claim brought by Hearns parallels the Second Claim contained in the Wilson complaint: Hearns charges that M&T and Chase conspired with the PK Defendants to conduct the affairs of the alleged enterprise through a pattern of racketeering activity. (Id. ¶¶ 246-58.) The Third Claim for relief asserted by Hearns charges the appraisers with conspiring with the PK Defendants to violate 18 U.S.C. § 1962(c). (Id. ¶¶ 259-68.) The Fourth Claim in the Hearns Complaint charges all defendants with violating the UTPCPL. (Id. ¶¶ 269-315.) As did the plaintiffs in Wilson, Hearns also asserts a separate claim for relief against all defendants under the UTPCPL for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1664(d), and Regulation "Z" 12 C.F.R. § 226.24(c). (Id. ¶¶ 316-29.) The Sixth Claim in the Hearns Complaint is brought only against the PK Defendants, and claims a violation of the UTPCPL through a "bait and switch" scheme. (Id. ¶¶ 330-41.) The final claim asserted by Hearns is against M&T and Chase, and is based upon the transfer of the servicing of the mortgage from M&T to Chase that occurred in mid-2001. (Id. ¶¶ 342-46.)

As relief, Hearns requests compensatory damages against all Defendants, jointly and severally, in excess of $1 million; damages in an amount not to exceed $1,000 for the alleged violation of RESPA purportedly committed by M&T and Chase; attorneys' fees and costs; treble and punitive damages; and injunctive relief that would include a cease and desist decree,

disgorgement of allegedly ill-gotten gains, and restitution.

Five separate motions to dismiss have been filed. The motions to dismiss have been fully briefed and are ripe for decision.

## II.   DISCUSSION

### A. First Claim for Relief – the Racketeering Act Claim Against the PK Defendants

Donald Kishbaugh and the other PK Defendants, with the exception of Defendant Parisi, have moved to dismiss the First Claim for relief on the ground that Hearns's averments are insufficient to establish either the "enterprise" or the "pattern of racketeering activity" elements of a RICO claim. This contention was addressed and rejected in the Wilson Opinion in denying the PK Defendants' motion to dismiss the Racketeering Act claim asserted in the Wilson complaint. For the reasons set forth in the Wilson Opinion, the motion challenging the adequacy of the complaint with respect to the elements of the Racketeering Act claim presented against the PK Defendants in this matter must be denied.

Defendant Parisi has moved on his own behalf to dismiss the First Claim for relief. (Dkt. Entry 6.) His challenge to the sufficiency of the First Claim for relief is also without merit. In this regard, contrary to Parisi's contention, the parol evidence rule does not foreclose Hearns's fraud claims, which essentially concern misrepresentations extraneous to the agreement of sale and closing documents. Moreover, many of the misrepresentations pertain to the inducement to enter into a contractual relationship, and our Court of Appeals has recognized that "evidence

of fraud in the inducement will suspend the parol evidence rule because fraud prevents formation of a valid contract – 'no contract, no parol evidence rule.'" Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Investments, 951 F.2d 1399, 1408 (3d Cir. 1991). Accordingly, Parisi's reliance upon the parol evidence rule is misplaced.[5]

Parisi also contends that the Racketeering Act claim is barred by the four-year limitations period. This action was filed on February 15, 2005. A Racketeering Act claim would be untimely if it accrued before February 15, 2001. In determining when a Racketeering Act claim accrued, the controlling questions are (1) when did the plaintiff know or have reason to know of his injury, and (2) when did he know or have reason to know of the source of his injury. Prudential Ins. Co. of America v. U.S. Gypsum Co., 359 F.3d 226, 233 (3d Cir. 2004); Forbes v. Eagleson, 228 F.3d 471, 484-85 (3d Cir. 2000).

Parisi contends that Hearns knew or should have known of the injury and source of injury no later than the closing date, December 21, 2000. Hearns, however, counters by pointing to averments in the Complaint that indicate that it was not until some time after February of 2001 that he was informed that the real estate taxes would be higher than originally anticipated; that he would incur other expenses neither anticipated nor disclosed at the time of the closing; and that the property had a market value substantially below the appraiser's

[5]It should be noted that no other Defendant has raised the applicability of the parol evidence rule to the claims presented here.

valuation. Accepting these averments as true and drawing all reasonable inferences from those averments in Plaintiff's favor, Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), dismissal of the Racketeering Act claim on statute of limitations grounds on a motion to dismiss would clearly be inappropriate.[6] Accordingly, the First Claim for relief in Hearns's complaint survives the PK Defendants motions to dismiss.

**B. The Racketeering Act Conspiracy Claims**

The Second and Third Claims of Hearns's Complaint charge the Lender Defendants and the Appraiser Defendants, respectively, with conspiring with the PK Defendants to conduct the affairs of an enterprise through a pattern of racketeering activity. M&T, Chase and Spitzfaden have moved separately, each assailing the sufficiency of the averments to state a viable Racketeering Act conspiracy claim. For the reasons set forth in the Wilson Opinion, the challenges to the sufficiency of Claims Two and Three must be rejected.[7] Moreover, for the

[6]It should be noted that the averments of the complaint concerning alleged fraudulent concealment of the cause of action (Complaint ¶¶ 225-26) are, like those set forth in the Wilson opinion, "woefully inadequate." (Wilson Opinion at 29.) Thus, the Racketeering Act claim is saved from dismissal, not because of the fraudulent concealment doctrine, but because the averments of the Complaint, construed liberally in Plaintiff's favor, are sufficient to support an inference that he neither knew nor should have known of his injury and its source until a date within four years of the filing of this action.

[7]Chase has moved alternatively for summary judgment, asserting that its involvement in this matter was limited to servicing the mortgage loan after acquiring servicing rights six months after the closing. Chase contends that its limited involvement cannot support conspiracy liability. The allegations of the Complaint, however, are sufficient to include Chase in the alleged conspiracy. The fact that it may have only acquired servicing rights does not

(continued...)

reasons set forth above, challenges to the timeliness of the Racketeering Act claim must also be denied at this time. Accordingly, the Second and Third Claims for relief survive the motions to dismiss.

**C. The UTPCPL Claims**

The UTPCPL claims presented in the Fourth through Sixth Claims for relief parallel similar claims presented in the Wilson complaint. As set forth in the Wilson Opinion, a viable UTPCPL cause of action has not been presented against the Lender Defendants. In this regard, no misrepresentations are attributed at all to Defendant Chase. The only statement attributed to M&T is that it purportedly informed Plaintiff at the closing that the real estate tax on the property at the time of the solicitation or closing was less than he eventually had to pay. (Complaint ¶ 284.) Elsewhere in the Complaint, however, Plaintiff alleged that he had no contact whatsoever with M&T. Under these circumstances, the Complaint does not satisfy the requirement that fraud be alleged with particularity as to Defendant M&T. Accordingly, the UTPCPL claims asserted against the Lender Defendants will be dismissed.[8] In all other respects, however, the motions challenging the viability of the Fourth through Sixth Claims for

---

[7](...continued) necessarily foreclose its alleged participation in the claimed conspiracy. Accordingly summary adjudication of Chase's involvement is not appropriate at this time.

[8]As in Wilson, Hearns will be granted leave to amend to attempt to cure the pleading deficiencies with respect to the UTPCPL claims asserted against the Lender Defendants.

relief will be denied substantially for the reasons set forth in the Wilson Opinion.[9]

**D. The RESPA Claim**

Plaintiff's Seventh Claim for relief is that M&T and Chase violated RESPA by failing to provide notice of the transfer of the servicing of the mortgage loan. (Complaint ¶¶ 343-45.) The Lender Defendants have moved to dismiss the RESPA claim as time-barred.

RESPA provides a three year limitation period in the case of a violation of the notice provisions. See 12 U.S.C. § 2614. In this case, Hearns alleged that he was aware of the transfer of the servicing of the mortgage in June of 2001. (Complaint ¶ 205.) This action was not brought until February of 2005, well after the limitations period on a RESPA claim expired. Accordingly, the RESPA claim will be dismissed.[10]

---

[9]Parisi, relying upon Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), asserts that the UTPCPL claims are barred by the "economic loss doctrine," which is applied to preclude tort claims in cases involving injury to property where responsibility may be affixed by contract. Id. at 671. For example, Werwinski involved alleged product defects that diminished the value of automobiles, a matter covered by warranties. Significantly, Werwinski recognized that the economic loss doctrine would not be applicable in the context of fraud in the inducement claims. Id. at 676-77. The UTPCPL claims largely concern fraud in the inducement, and are therefore not barred by the economic loss doctrine.

[10]As noted above, Hearns has failed to allege facts sufficient to invoke the fraudulent concealment doctrine. Nor has he presented a basis for equitable tolling of the limitations period. In this regard, the Complaint alleges media coverage of predatory lending practices in May of 2001. It cannot be said that commencing an action nearly four years later reflects due diligence.

**E. Other Issues**

Challenges have also been raised with respect to the request for unliquidated damages in a specified amount and the request for a cease and desist order, disgorgement and restitution for the alleged violations of the UTPCPL. Local Rule of Court 8.1 precludes specification of a sum of money sought by the plaintiff where, as here, unliquidated damages are at issue. Thus, the claim for a specific amount of damages in this case will be stricken. Plaintiff concedes that he is not entitled to any relief other than damages for alleged violations of the UTPCPL. Thus, the requests for a cease and desist order, disgorgement and restitution sought under the UTPCPL will be stricken.

## III. CONCLUSION

For the reasons set forth above, the motions to dismiss Hearns's first three claims for relief, brought under the Racketeering Act, will be denied. The Fourth and Fifth Claims, to the extent that relief is sought from the Lender Defendants for violations of the UTPCPL, will be dismissed with leave to amend. The Seventh Claim, which is asserted under RESPA against only the Lender Defendants, will be dismissed with prejudice. As Plaintiff has not justified the assertion of a specific amount of damages claimed in the Complaint and has conceded that certain remedies for alleged violations of the UTPCPL are not available to him, those requests

for relief will be stricken.  An appropriate Order follows.

                                                **s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GAINES E. HEARNS, JR.,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION NO. 3:CV-05-323** |
| | : | **(CHIEF JUDGE VANASKIE)** |
| **STEVE PARISI, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

**NOW, THIS 27th DAY OF MARCH, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Motion to Dismiss filed on behalf of Defendant Parisi (Dkt. Entry 6) is **DENIED.**

2. The Motion to Dismiss filed on behalf of Defendant Spitzfaden (Dkt. Entry 11) is **DENIED.**

3. The Motion to Dismiss filed on behalf of the remaining PK Defendants (Dkt. Entry 20) is **DENIED.**

4. The Motion to Dismiss or, in the alternative, for Summary Judgement, filed on behalf of Defendant Chase Manhattan Mortgage Corporation (Dkt. Entry 12) is **GRANTED IN PART.** The claims asserted against Defendant Chase Manhattan Mortgage Corporation in the Seventh Claim are **DISMISSED, WITH PREJUDICE.** The claims asserted against Defendant Chase

Manhattan Mortgage Corporation in Claims Four and Five are **DISMISSED, WITHOUT PREJUDICE.**  In all other respects, the Motion to Dismiss of Defendant Chase is **DENIED.**

     5.  The Motion to Dismiss of Defendant M&T Mortgage Corporation (Dkt. Entry 21) is **GRANTED IN PART.**  The claims asserted against M&T in the Seventh Claim are **DISMISSED, WITH PREJUDICE.**  The claims asserted against M&T and the Fourth and Fifth Claims for relief are **DISMISSED, WITHOUT PREJUDICE.**  In all other respects, M&T's motion is **DENIED.**

     6.  Plaintiff's claim for a specific dollar amount in damages is **STRICKEN.**

     7.  The relief requested in paragraphs 315, 329, and 341 of the Complaint for alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law is **STRICKEN.**

     8.  Plaintiffs may file an Amended Complaint with respect to the Fourth and Fifth Claims for relief against M&T and Chase within twenty (20) days from the date of this Order.  Failure to file an Amended Complaint will result in the dismissal, with prejudice, of the Fourth and Fifth Claims for relief against M&T and Chase.

     9.  A case management conference shall be conducted on **Monday, April 24, 2006**, at **10:30 a.m.** in Room 401 of the William J. Nealon Federal Building & U.S. Courthouse, 235

North Washington Avenue, Scranton, Pa.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania